Chancellor James
afterwards delivered the decree of the Court.*
'The application made to the court in this case on the part of complainant is, that an issue of devisavit vel non should be directed to, the Court of Common Fleas, to try the validity of the will of Archibald John Calder, deceased, so far as it relates to his real estate ; and that it should be referred back to the ordinary to enquire whether said will was fairly obtained, so far as it relates to the personal property. The will, it appears, was proved before the or-; dinary by one of the subscribing witnesses of the name of Kelly, after the two other witnesses Megget and Obrien had declined proving the same, because they thought that the testator at the time of executing the will was not sufficiently in his senses to dictate or make his will.
On the part of the complainant, the two surviving witnesses to the will, Mr. Megget and Mr. O’Brien, have *357 Leen produced to shew that the testator was insane at the time of making .the will. Mr. Megget appears to be somewhat doubtful, but says that he does not think that testator could have dictated the will at the time; that his ideas were not sufficiently connected to have dictated it in two or three days, and that he told Mr. Seabrook, one of the defendants, that he could not prove it. The other witness, Obrien, seems to have been very positive as to the insanity of testator ; he says it arose from intoxication, and that he could not keep him from drink. That he was the overseer of testator, and resided on his plantation from the first of February till his death, about the 20th April: That in all that time he never gave him any directions about his plantation, except in the first week : that from excess of drink and weakness, he was almost constantly in a stupid state, and would doze and wake up, and then call out what men are those in the room, when none *358 were present; and ask witness if he was not afraid. This witness also states that the will was made in half an hour or three quarters. Mr. Calder and Mr, Joseph Seabrook have also supported the testimony of Obrien as to the insanity of die testator; and one of the witnesses called for the defendants, has stated that the testator carried his love of strong drink so far as to take spirituous liquors with his medicines. On the other hand, two of the witnesses for the defendants, Dr. Auld, the attenc|ing physician, and Mr. Mikell, sen. who drew the will of testator, both of whom appear to be entitled to the highest credit, have declared that the testator appeared to be perfectly in his senses. Dr. Auld states that when he called as a physician to see him, which was on the day the will was made, that to all his enquiries as to his state of health', he was rational and connected, and he thinks' he corrected his servants in their statements., Old Mr. Mikell says that he *359 gave him instructions to draw, his will nearly in the same manner as his father’s ; that he accordingly drew it as difected ; that he suggested to him the names of some new negroes he had lately acquired, and this after an interval in' which he was interrupted ; that witness himself did not lenow the names of those negroes ; that after he drew the will,' he read it over to the testator, and that he approve ed of it."
From the evidence which has' been recited, it therefore plainly appears, that the question of the sanity or insanity of the testator is' extremely doubtful, and' that of itself Would be a sufficient reason for the court to interfere, as" they did in the case of M’Dowall & Peyton ; and the more especially as the will was proved by only one witness,-when the other two declare that they could not have proved it. But to this inference it is- objected that the complainant Palmer had visited the plantation of the deceas *360 ed five or six days after his death, where he had an oppofi-tunity at least to have examined the witness Obrien, and tkat frotn theiice he had written to defendants that he re-linqiiished His objections to the will; that h'e went away the next day, and did not stir in the business Until twelve months after. It is therefore urged that this case is different from that of M’Do wall, who was out of the state,- and could not be connusárít of his rights; whereas the complainant was in the state, and if not connusánt of Jiis rights, might have made himself so; that consequently he' lias been guilty tif gross laches, and is not entitled to the relief of this court; But it appears on the other side that, the complainant lived at á ¿oñsiderable distance; that at the time he visited the plantation of the testator, he was in a very ill state of health, arising fromi a Wound he had received in his thigh; and that from a fever he was in constant pain Also, if we are to believe the witness Obrien, *361 {and there is nothing to contradict - his testimony) he had been tampered with by one of the defendants, Wm, Sea-brook, hot to give complainant any information on the subject, and that he did not do so at that time. These circumstances which have been stated form a pretty good excuse for complainant; and we think this unfairness on the part of One of the defendáiits, which we must at present believe, will more than counterbalance the laches on the part of complainant, and afford an equitable ground for the interference of this court. The court therefore decrees that the defendants do consent to a revocation of the probate in the court of ordinary $ which will then be set aside, and the parties be at liberty to proceed de novo, as to'the will of the personal estate.

Notb. — There is a good deal of delicacy and difficulty on the subject of the Court of Chancery, interfering with the decisions of the Court of Ordinary, in relation to the probate of last wills and testa-; ments.
There is no doubt that the jurisdiction belongs to the Court of Ordinary in the first instance. And it is laid down in the English books, that the only case in which fraud cannot be (directly) relieved against in equity, concurrently with courts of law, though discovery be sought, is the case of fraudin obtaininga will, which if ofreal estate, is constantly (since the case of Kerricke v. Bransley, 3 Bro P. C. 358, decided in 1727,) referred to a court of law, in the shape of an issue, devisavit vel non; and which, if of personal estate, is cognizable in the Spiritual Court. But though the Court of Equity cannot directly set aside a will for fraud, they can convert the person, practising the fraud, if he claim benefit under the yvill, into a trustee, (at least to the extent of such benefit,) for the benefit of the person injured by the fraud. 1 Fonb. 12, 13. 2 Fonb. 63, 4. In the case of Fearon, reported in 5 Vesey, 647, the Lord Chancellor said, “this Case affords á strong instance of the inconvenience of that decision, (of Kerricke v. Bransley, 3 Bro. P. C. 358) that this Court cannot take cognizance of wills of. personal estate, as to matters of fraud.”
Indeed the subject has been much controverted and various decisions had upon it, at different periods. Formerly it was decided that a will as well as a deed might be set aside in Chancery for fraud *357 or cir.cumvertion. Welby v. Thornaugh. Prec. in Ch. 123. A will of landmay be good at law, if duly executed, and yet may be set aside in Equity, if obtained by fraud. Goss v. Trapy. 1 P. Wms. 287, 2 Vern. 699. (Decided in 1715.) And vide 1 Chanpery Rep. 12, 16, for other instances of a will of lands being set aside in Equity, for fraud. But the later decisions have been the other way, see James v. Greaves, in 2 P. Wms. 270; Bennet v. Vade. 2 Atk. 324. Webb v. Claverden, 2 Atk. 424; Anonymous, 3 Atk. 17. In all which cases it was decided that the validity of a will of real estate, is triable only at law. And so with respect to testaments of personal estate, it belongs to the Spiritual Court to determine questions of fraud in obtaining them, as well as the smity of the testator. See Archer v. Moses. 2 Vern. 8, Nelson v. Oldfield. 2 Vern. 76, Kerricke v. Bransly, 3 Bro. P. C. 358; Marriott v. Marriott, Stra. 666 ; Barnsley v. Powell, 1 Vesey, sen. 287; Meadows v Dutchess of Kingston, Ambler, 756. But in cases of fraud affecting apart only of the will. Equity will decree the legatee to be a trustee for another. See Marriott v. Marriott. Stra. 666; and in Barnsley v. Powell, 1 Vesey, sen. 119, 284, Lord Chancellor Hardwicke set aside, for fraud, a deed of proxy, under which probate had been obtained from the Spiritual Court, and decreed the guilty party, to consent to a repeal of the probate.
And there are many cases relating to wills in which this court forced to interfere to prevent manifest injustice.
*358 As ina case where a former will of land was cancelled by the tes* tator, on a presumption that his later will was duly executed and good, but which proved nqt to bo so, equity relieved under the head of accident, and enjoined the heir in favor of the first devisee. Onions vs. Tyrer, 2 Vern. 741, and Prec. in Chancery 459.
So where a will was decreed in the exchequer to be well proved, which was afterwards found to be forged, the court of chancery decreed that no use should be made thereof. A will of personal estate jis examinable in the ecclesiastical court, but chancery will, if possible, avoid sending it there, after it has been found to be forged by a jury, if the real estate is thereby bound and the court will go as far as it can to decree the parties trustees. See Barnsley vs. Powell, 1 Vesey, sen. 284, 7, (decided in 1749) and Kerricke vs. Bransley. 3 Bro. P. C. 358; and Powis v. Andrews. 2 Bro. P. C. 476.
Mr Fonblanque lays it down, that all parties prejudiced by the fraud, in obtaining a will, may file a bill in equity for a discovery of all the circumstances; and the invariable practice in such cases is, to seek relief; and the issue directed is to furnish the ground on which the court is to proceed in giving relief. Fonbl. chap. 2, sec. 3, note (n.)
The footing on which the different jurisdictions as to wills of real estate, and testaments ofpersonal estate now stands,.produces embarrassment, and sometimes contradiction-: and Lord Chancellor Hard-wicke thought it an absurdity that a will set aside at law for the insanity of the testator, might still he litigated on account of the personal *359 estate in. the ecclesiastical court, and expressed a wish for a change.— ín such a case, he appointed a receiver instead of the executors, until the litigation in'the ecclesiastical court should he terminated. See Montgomery vs. Clarke. 2 Atk. 378.
Mischievous effects flow from this conflict of jurisdictions, complained of by Lord Hardwicke. Contradictory decisions Were made by the ecclesiastical court, and by the court of law, on the question whether a man was compos’of non compás, and- both decisions stood, to the disgrace of justice. See the case of Baker vs Hart. 3 Atfe, 646. So too the Dutchess of Kingston was convicted- of bigamy in the house of lords, for marrying Capt. Harvey, and afterwards in hife lifetime, theDuke ofKingston. Yet she was permitted to keep the great fortune bequeathed to her as his wife, by the Duke ofKingston, because the court of chancery was precludéd from enquiring and deciding, according to the fact, by a sentence of the ecclesiastical court obtained by the Dutchess against Capt. Harvey, in a suit for jactitation ofmarrjage, which decided that she was not married tor Captain^ Harvey, and enjoined perpetual silence oh him. See Meadowes vs. Dutchess of Kingston. Ambler, 756.
In the case of Fearon, 5 Vesey, 633, the court of delegates had set aside a will on parol evidence, that it had been obtained by undue influence, or that the testator intended to make a material alteration, from which he was deterred by foe management and contrivance of Eearon. On the application of Fearon,hy petition for abill of review, *360 the counsel argued that thfe' admission of parol evidence to revoke, alter or annul a will, was contrary to the statute of frauds. This was ■ Opposed by the counsel on the other side, who cited many cases to shew that the court of delegates had, on parol evidence, struck out-particular clauses of wills obtained By fraud, and inserted clauses-omitted by fraud or mistake. (See 5 Vesey, 638, 9, 640,) and the Lord Chancellor said (pag’es 644, 5) that bound by the statute of frauds, this court has nevertheless directed an issue to try, whether a will has been obtained by fraud, or whether a testator haá been hindered from altering a will, and that both these issiu.es are consistent with the observance of the statute of frauds. lie was against issuing a commission of review in the case of Pearon, because he concurred with the court of delegates, that the evidence made out a cáse of fraud on which the will ought to have been set aside as it had been.
So in cases where the executors or heirs promise to the sick person to pay certain legacies, or convey certain lands to others to whom the-tfestator wished to devise, and would have made his will accordingly,but relying on such promises, forebore to do so : This court will interfere and give effect to the intentions of the deceased person, even in the case of lands, notwithstanding such promises were verbal, and the statute of frauds relied on in defence. See Reede vs. Kennigate, 1 Ves. 123, 4. Ambl. 67, (decidedby Lord Chancellor Hardwicke in 1748.) Also, Oldham vs. Litchfield, 2 Vern. 506. Thynn vs. Thynn, 1 Vernon, 296; and Sellach vs. Harris. 5 Viner, abridged- — de. *361 bided by Lord Cowper. See too Drakeford vs. Wilks. 3 Atk. 539. See also the case of Dufour vs. Pereira, in Hargreaves’s Juridical Collections, in which Lord Chancellor Camden decreed a devisee and ■legatee tobe a trustee for another under thd circumst,andes of the case. Soifawillbe suppressed by the heir or Other person, this court gives relief by decreeing the heir, &c. to convey the property to the person intended to be benefited by the testator: And the decree directs that he shall hold the property. The rule is laid down that upon reasonable proof of the suppression of the will, it must be most strongly presumed against the suppressor, and the will to betaken as ' set forth in complainant’s bill till the will is produced. Hampden vs. Hampden. 1 Bro. P. C. 250. Dalston vs. Coutsworth. 1 P. Wms. 731. 1 Vern. 452, 408. 2 Vern. 32, 561. 2 P. Wms. 748 to 753.
So too, though the court of equity does not exercise broadly and directly, a concurrent jurisdiction in cases of fraud in obtaining wills, this relates to the mode of execution, and the capacity of the testator, for there are other cases where it does interfere. If alegacy is given to a p erson under a particular character which he has falsely assumed, and which alone was the motive of the bounty, the rule of the civil law is adopted, and the legacy fails ; and this court will interfere to prevent its payment. Swinburn, 557. Kennel vs. Abbot 4 Vesey, 802. Exparte Wallop. 4 Bro. C. C. 90. Roach vs. Haynes. 8 Vesey, 593; and see Cooper’s Justinian — and Co. Lilt. 79 note (i.) And where a title depends on the words of a will, Lord Chancellur Talbot expressly lays it down that this court may determine it as well as a judge and jury. 3 P. Wms. 296, 7.